PEARSON, MJ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM MARSHALL, | ) | CASE NO.1:09CV0259 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | BENITA Y. PEARSON |
| TIMOTHY BRUNSMAN, Warden | ) | |
| | ) | |
| Respondent. | | **REPORT AND RECOMMENDATION** |

### I. Introduction

Before the Court is the petition of William Marshall (also "Petitioner") seeking a writ of habeas corpus pursuant to Title 28 U.S.C. § 2254. This Report and Recommendation is submitted in response to that *pro se* petition.

Marshall is currently serving an aggregate sentence of thirty-three (33) years[1] to life in prison imposed following his November 2, 2005 convictions (and subsequent resentencing) resulting from a jury trial on three counts of aggravated robbery, one count of aggravated burglary, and two counts of murder, all counts including 3-year firearm specifications.[2] ECF No. 9-2, Ex. 5 and 6.

In his federal habeas petition, Marshall raises three grounds for relief summarized as: (1)

---

[1] Marshall was originally sentenced to an aggregate prison term of forty-two years to life, but, as the procedural history reveals, he was subsequently resentenced to a lesser term.

[2] Marshall waived his right to a jury trial on one count of having a weapon while under a disability, opting to have this charge tried to the court. ECF No. 9-2, Ex. 4. Upon finding Marshall guilty of this charge, the trial court sentenced him to time served. ECF No. 9-2, Ex. 6.

(1:09CV0259 )

alleging that his convictions for felony murder were void as allied offenses of similar import; (2) that he was sentenced to enhanced sentences based upon findings not in the record; and (3) that he had been subjected to inadequate representation at trial which violated his right to counsel. Respondent asserts that Marshall's second claim for relief is moot, and otherwise not cognizable in federal habeas corpus. Respondent also argues that Marshall's three grounds for relief have been procedurally defaulted.

## II. Factual and Procedural Background

The State appellate court's factual findings shall be presumed correct; petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Brumley v. Wingard*, 269 F. 3d 629, 637 (6th Cir. 2001). The Cuyahoga County Court of Appeals, Eighth Appellate District, found the facts of the underlying offenses and trial to be as follows, in pertinent part:

> Tony's Delicatessen is located at the corner of Scranton Road and Meyer Avenue in Cleveland, Ohio, and is owned by Fethi Belhouane, a.k.a. "Tony." On Monday, December 13, 2004, at approximately 9:30 p.m., three black males entered the store to rob it. During the robbery two individuals were shot and killed. Because of his involvement in the planning of the robbery, Marshall was charged with three counts of aggravated robbery, one count of burglary, two counts of felony murder, and one count of having weapons while under disability. The testimony at trial revealed that on Friday, December 10, 2004, Marshall, John Williams, L.C. Wainwright, Marion Keith, and James Corbin were at Corbin's house just down the street from Tony's Deli. The five of them discussed robbing Tony's Deli, saying it was an easy "lick" because the owner did not have a gun and hid a lot of cash above the counter. Marshall provided Williams with a .38 caliber revolver. The plan was for Williams and Wainwright to rob the deli and then call Marshall; they would all then meet at Marshall's cousin's house to divide up the money and return the gun to

(1:09CV0259 )

>Marshall. Keith drove Wainwright and Williams to the deli, but there were too many people inside, so they returned to Corbin's house. Wainwright told Marshall that he wanted another gun.
>
>On Saturday, December 11, 2004, all five males were at Corbin's house again discussing the robbery. Marshall suggested that they tie Tony up and provided plastic ties to Wainwright. Again, the plan was to call Marshall after the robbery and to meet at Marshall's cousin's house to divide up the money and return the guns. Keith drove Wainwright and Williams back to the deli. The two went inside, but changed their minds because there were "little kids" inside. On Sunday, December 12, 2004, all five were together again at Corbin's house, and Marshall brought a second gun, a nine millimeter. Williams decided they needed a third person. They discussed who the third person should be, but could not decide.
>
>On Monday, December 13, 2004, all five were to meet at Corbin's house. Marshal suggested Sean Rembert for the third person and called him. Marshall then called Williams and told him to pick up Rembert on his way to Corbin's house. The plan was the same. Keith drive the car and dropped off Wainwright, Williams, and Rembert at the deli and then waited around the corner for them. Williams and Rembert had the guns.
>
>Buster Ford testified that he saw three men walk into the deli and heard one of them shout, "Give it up, mother f***ers," as shots rang out. Buster ran out of the store. Rebecca Cordoves was running behind him; Buster heard another gunshot and saw her fall to the ground outside the store. Williams ordered Tony down to the floor and fired his gun at him but did not hit him. Someone went through Tony's pockets and took his money. Jorge Santiago was ordered to open the cash register, and when he asked the gunman to "hold on," he was shot. He landed on top of Tony. Tony testified that the robbers were searching for money everywhere, knocking things over in the process. After the gunmen left, Tony was able to hit the panic alarm and call 911 on his cell phone. Tony went outside because he could not look at Jorge bleeding to death, and saw Rebecca lying on the ground with her husband crying over her.
>
>Tony testified that he knew Marshall, Keith, Corbin, Williams, and

3

(1:09CV0259 )

>Rembert because they were frequent customers.  He said Williams was the first person through the door and was the one who shot at him. Tony was not injured.  Jorge was shot twice, once in the right arm and once in the chest.  Rebecca was shot in the back as she tried to run out of the store.  Rebecca was buying baby formula for her newborn.
>
>Officer George Kirby was first on the scene of the murders.  He observed Rebecca lying on the ground in front of the store, as well as three males running from the store. Officer Kirby pursued the three males, but lost sight of them in an alley near the store.  He returned to the store and observed Jorge lying in a pool of blood.  EMS transported both victims to MetroHealth Medical Center.  Officer Kirby secured the scene for the homicide division.
>
>Officer Dympha O'Neill testified that she and her partner responded to the scene and stopped Corbin and Marshall, who were driving a work van in the area.  Marshall told the officers he was making deliveries in the area.  The van was checked for weapons, and they were sent on their way because they did not match the description of the suspects.  Marshall called the police station later that evening to see if he could go back on the road to make more deliveries.
>
>All involved in the robbery met at Marshall's cousin's house, which is located in close proximity to Tony's Deli.  They went upstairs, and Williams handed the money to Marshall.  Marshall divided the cash into six piles.  He took approximately $250.  The guns were returned to Marshall.
>
>Rita Nieves testified that she saw Marshall at his cousin's house on the night of the murders.  She said all of them rushed upstairs and then came back down ten to fifteen minutes later.  She saw someone with a gun, but was not sure which one was carrying it.
>
>Geri Mayberry lives with Corbin and has three children with him.  She testified that Marshall, Keith, Williams, and Wainwright were at her house the days preceding the robbery.  She testified that she saw Marshall with a gun at her house.
>
>Keith, the getaway driver, pled guilty to two counts of involuntary manslaughter and one count of aggravated robbery.  Wainwright,

(1:09CV0259 )

> who entered the store, pled guilty to two counts of murder and one count of aggravated robbery. Wainwright and Keith testified on behalf of the state.
>
> Three spent shell casings were recovered from the scene; all were fired from the same nine millimeter handgun. It was determined that the .38 caliber pellets recovered from both victims were fired from the same gun that was found in Marshall's boat, which was stored in his girlfriend's backyard. The nine millimeter handgun was never recovered because Marshall gave it to another "guy" who "needed a gun."
>
> Marshall took the stand on his behalf and denied being involved in the planning of the robbery. He insisted that he gave the guns to Corbin to sell to Williams and Rembert. Marshall testified that his four-page typewritten statement, in which he admits his involvement in the robbery but minimizes it, was fabricated by Detectives Veverka and Metzler. He claimed that he never read his statement because he was crying and had high blood pressure, but he did admit he signed it and made a correction on page one.

[ECF No. 9-2, Ex. 10](#).

In his timely filed direct appeal of his convictions, Marshall raised the following four assignments of error:

> I.  The State failed to present sufficient evidence to sustain a conviction against appellant.
>
> II. Appellant's convictions are against the manifest weight of the evidence.
>
> III. The trial court erred by ordering convictions and consecutive sentences for separate counts of felony murder and aggravated robbery and aggravated burglary because the offenses are allied offenses pursuant to R.C. 2929.14.
>
> IV. The trial court erred by ordering appellant to serve a consecutive sentence without first considering a concurrent sentence and by making findings not supported by the record.

5

(1:09CV0259 )

ECF No. 9-2, Ex. 8. On November 30, 2006, the appellate court affirmed the convictions, but vacated the sentences and remanded the case back to the trial court for resentencing in light of the then recent decision of the Supreme Court of Ohio in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.3d 470 (2006). ECF No. 9-2, Ex. 10.

Marshall timely appealed that ruling to the Supreme Court of Ohio, alleging two propositions of law:

> **Proposition of Law No. I:** Due process of law requires sufficient competent credible evidence to prove each essential element of a charged criminal offense beyond a reasonable doubt to sustain a resulting conviction.
>
> **Proposition of Law No. II:** Where a charge of felony murder under Ohio Revised Code § 2903.02(B) specifies that the underlying "offense of violence that is a felony of the first or second degree" is aggravated robbery, the underlying charge of aggravated robbery becomes an allied offense, notwithstanding the *Rance* test and double jeopardy implications are affected.

ECF No. 9-2, Ex. 11. On March 28, 2007, the Supreme Court of Ohio denied Marshall leave to appeal and dismissed the appeal as not involving any substantial constitutional question. ECF No. 9-2, Ex. 13. No further appeal was taken.

Pursuant to the mandate of the Eighth District Court of Appeals, Marshall's case was remanded to the trial court and he was resentenced on February 26, 2007 to the original sentence, but this time with the firearm specifications merged, resulting in an aggregate sentence of thirty-three (33) years to life. ECF No. 9-2, Ex. 14.

Marshall filed a timely direct appeal of the sentence he received upon resentencing, articulating the following three assignments of error:

6

(1:09CV0259 )

    I.    Under current sentencing laws and, given the facts and circumstances surrounding this case, there is clear and convincing evidence that MARSHALL'S sentence is excessive.

    II.    The trial court failed to engage in comparison analysis to determine if MARSHALL'S sentence was similar to those sentences given for similar crimes.

    III.    MARSHALL is entitled to a presumptive minimum sentence because a greater sentence would violate the Ex Post Facto and Due Process Clauses of the United States Constitution.

ECF No. 9-2, Ex. 16. On April 3, 2008, the State appellate court affirmed the resentencing judgment of the trial court. ECF No. 9-2, Ex. 18.

Marshall appealed that ruling to the Supreme Court of Ohio, alleging a sole proposition of law:

> **Proposition of Law No. I:** The remedy that this Court set forth in State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, violates the Ex Post Facto and Due Process Clauses of the United States Constitution.

ECF No. 9-2, Ex. 19. On September 10, 2008, the Supreme Court of Ohio denied Marshall leave to appeal and dismissed the appeal as not involving any substantial constitutional question. ECF No. 9-2, Ex. 21.

In parallel proceedings filed in the trial court four weeks after his conviction and ten days after filing his direct appeal of his conviction with the Ohio Eighth District Court of Appeals, Marshall filed a post-conviction petition captioned "Petition to Vacate the Conviction Owning to Gross Ineffective Assistance of Counsel That Allowed Offenses to be Tried Void of Subject Matter Jurisdiction." ECF No. 9-2, Ex. 22. That post-conviction petition was denied by the trial court five days later, on December 6, 2005. ECF No. 9-2, Ex. 23. Marshall did not file an appeal

(1:09CV0259 )

of that ruling.

Meanwhile, two years later, in parallel proceeding filed while Marshall's appeal of his sentence upon resentencing was pending, he filed with the State trial court a pleading captioned, "Defendant Marshall's Motion For Leave to File Motion For New Trial Because of Error at Trial Pursuant to Ohio Criminal Rule 33(A)(5)," in which he alleged:

1. Defendant's conviction and sentence for murder per O.R.C. §2903.02(B) is contrary to law as depriving defendant of the equal protection of law under the Ohio as well as United States Constitution under the statute as applied.

2. Defendant was deprived of the effective assistance of counsel at trial which serves as cause for the untimely filing of the motion for new trial and prejudice is manifest where the sentence is life when as a matter of law it could not have exceeded ten (10) years.

ECF No. 9-2, Ex. 24. On January 10, 2008, the trial court overruled the motion. ECF No. 9-2, Ex. 26.

Marshall appealed the overruling of his motion for a new trial to the Ohio Eighth District Court of Appeals, but that appeal was dismissed *sua sponte* by the appellate court one month later for failure to file the record pursuant to Rules 3(A) and 10(A) of the Ohio Rules of Appellate Procedure and Rule 10 of the Local Appellate Rules.[3] ECF No. 9-2, Exs. 27 and 28.

Marshall appealed that ruling to the Supreme Court of Ohio, alleging three propositions of law:

> **Proposition of Law No. I:** The Court of Appeals errors in dismissing an appeal sua sponte for failure to comply with App. R.

---

[3] Marshall's subsequently filed motion for reconsideration was denied by the appellate court on March 31, 2008. ECF No. 9-2, Ex. 36.

(1:09CV0259 )

> 9(C) where the appellant ordered the trial court record by praecipe.
>
> **Proposition of Law No. II:** Defendant's conviction and sentence for murder per O.R.C. §2903.02(B) is contrary to law as depriving defendant of the equal protection of law under the Ohio as well as the United States Constitution as applied.
>
> **Proposition of Law No. III:** Defendant-Appellant was deprived of the effective assistance of trial counsel which served as cause for his untimely filing of the motion for new trial and prejudice is manifest where the sentence was life vies-a-vie ten years.

ECF Nos. 9-2, Exs. 30 and 31. On September 10, 2008 (the same date as it did on appeal of the affirmance of the sentencing judgment upon resentencing) the Supreme Court of Ohio denied Marshall leave to appeal and dismissed the appeal as not involving any substantial constitutional question. ECF No. 9-2, Ex. 32.

On January 24, 2009, Marshall timely filed this petition for writ of habeas corpus alleging the following three grounds for relief:

> A. **GROUND ONE:** Convictions for murder void as violating equal protection clause-Ohio Constitution and 14th Amendment's Due Process Clause; U.S. Constitution.
>
> **Supporting FACTS:** Petitioner's convictions for murder per O.R.C. §2903.02(B) is violative of the equal protection Ohio Constitution made obligatory upon Ohio via the 14th Amendment's Due Process Clause.
>
> B. **GROUND TWO:** Enhanced portion of sentence void for lack of jurisdiction of subject matter.
>
> **Supporting FACTS:** State trial court sentenced petitioner for sentencing elements he was never charged with; trial court exceeded its sentencing authority under Ohio law made obligatory upon Ohio via the Due Process Clause; United States Constitution.

9

(1:09CV0259 )

    **C.**    **GROUND THREE:** Ineffective assistance of trial counsel in violation of the Sixth and Fourteenth Amendment.

        **Supporting FACTS:** Trial counsel rendered ineffective assistance where he failed to recognize, argue and brief the fact that O.R.C. §2903.02(B) as applied to petitioner denied him equal protection of law under Ohio Constitution made applicable to Ohio via Due Process Clause; United States of America.

ECF No. 1.

### III. Discussion

To permit federal judicial resources to focus on only the most compelling cases, a petitioner must successfully pass through several procedural gateways to qualify for federal review. The gateways relevant to Marshall's petition and their application are provided below.

    **A.**  **Jurisdiction**

Writs of habeas corpus may be granted by a district court within its respective jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(d).

Marshall was convicted in the Court of Common Pleas, Cuyahoga County, Ohio within

(1:09CV0259 )

the Northern District of Ohio and remains incarcerated.[4] The Court, therefore, has jurisdiction over Marshall's petition.

### B. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations period for federal habeas petitions filed by prisoners challenging state-court convictions after its April 24, 1996, effective date. 28 U.S.C. § 2244(d); *McCray v. Vasbinder,* 499 F.3d 568, 571 (6th Cir.2007). The provisions of the AEDPA are controlling herein as the instant petition was filed after the Act's effective date. *Lindh v. Murphy*, 521 U.S. 320, 322 (1997).

Marshall's petition was timely filed in accordance with 28 U.S.C. §2244(d).

### C. Mootness

Respondent asserts that Marshall's Ground for Relief is moot insofar as it challenges the "enhanced portion of his sentence" which he claims to have been based upon "elements he was never charged with." ECF No. 9 at 10. In his petition, Marshall acknowledges that he raised this ground in the direct appeal of his conviction and sentences. ECF No. 1 at 6. On direct appeal, Marshall argued, in his fourth assignment of error, that he was impermissibly sentenced to an enhanced sentence based upon findings made by the trial court which were not part of the record. ECF No. 9-2, Ex. 8. He also argued that, in ruling upon his sentencing claims, that the appellate court must not apply the remedy outlined in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.3d 470

---

[4]     *See* http://www.drc.ohio.gov/ (website of the Ohio Department of Rehabilitation and Correction for current status of and basis for Mansfield's incarceration)

(1:09CV0259 )

(2006), which he read as vitiating the need of trial judges to make findings in order to enhance sentences beyond the statutory minimum and concurrent terms of imprisonment. ECF No. 9-2, Ex. 8, p. 30.

The State appellate court sustained Marshall's fourth assignment of error, vacated his sentences, and remanded his case to the trial court for resentencing, "in light of the recent decision of the Supreme Court of Ohio in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856[.]" That court further held that Marshall's argument that the *Foster* remedy was improperly applied to him to was premature, as he had not yet been sentenced under *Foster*. ECF No. 9-2, Ex. 8 at 14-15.

The effect of sustaining Marshall's fourth assignment of error on direct appeal, which parallels the issue raised in these proceedings as Marshall's second claim for relief, was to negate the underlying constitutional challenge to Marshall's sentence given that he has already been resentenced and the challenged sentence no longer exists. When that same scenario was presented to another unit of this Court in *Charlton v. Beightler*, Case No. 1:07CV0035, 2007 U.S.Dist. LEXIS 91935 (N.D.Ohio December 14, 2007) (J. Nugent), the habeas petition premised upon the negated constitutional challenge was dismissed as moot. For the same reasoning, Marshall's second ground for relief should be dismissed as moot.[5]

### D. Procedural Default

Respondent asserts that each of Marshall's grounds for relief have been procedurally

---

[5] Having so ruled, it is unnecessary to address Respondent's argument that Marshall's second ground for relief is not cognizable in a federal habeas corpus petition.

(1:09CV0259 )

defaulted.  ECF No. 9 at 10.  In offering this defense, Respondent relies, in part, on Petitioner's failure to present Ground Two to the Supreme Court of Ohio.  Respondent also hinges this defense on the Ohio Eighth Appellate District Court of Appeals' enforcement of procedural default relative to Grounds One and Three.  ECF No. 9 at 11-12.  The Court declines to discuss this argument relative to Ground Two because of the preceding finding of mootness.  The Court's discussion and recommendation regarding the procedural default of Grounds One and Three follows.

     As a precursor to filing a writ of federal habeas corpus, a defendant must use all available State remedies *via* motion or petition for review by the State's highest court seeking relief based upon alleged violations of constitutional rights.  *Granberry v. Greer*, 481 U.S. 129, 133 (1987).  This threshold requirement, although not jurisdictional, is based upon issues of comity.  It permits State courts the opportunity to correct constitutional violations that may have occurred in those courts, while simultaneously creating a complete record for review should the case eventually be heard in a federal habeas corpus proceeding.  *Hafley v. Sowders*, 902 F.2d 480, 482 (6th Cir. 1990).

     When exhausting claims in State courts, if a habeas petitioner has failed to comply with an adequate and independent State procedural rule and, thereby, caused a default of his federal constitutional claims, the cause and prejudice test is applied to determine whether the default can be excused.  *Coleman v. Thompson,* 501 U.S. 722, 750 (1991)*; Lundgren v. Mitchell,* 440 F.3d 754, 763 (6th Cir. 2006).  A State procedural rule is adequate and independent if it is "firmly established and regularly followed."  *Dietz v. Money*, 391 F.3d 804, 809 (6th Cir. 2004) (quoting

13

(1:09CV0259 )

Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

      The Sixth Circuit, in *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), delineated a four-part approach for determining whether a habeas corpus petitioner's claim is barred by the failure to observe a State procedural rule. First, the district court must determine whether there exists a State procedural rule with which the petitioner failed to comply. Then the court must determine whether the State court enforced a sanction for failure to comply. If so, it must then be decided whether failure to comply with the State procedural rule constitutes an adequate and independent ground for barring federal review. If all these questions are answered in the affirmative, default exists and the petitioner must satisfy the "cause and prejudice" analysis set forth in *Wainwright, supra* at 138 to excuse the default.

      The arguments raised in Grounds One and Three of Marshall's petition were raised in his motion for a new trial and appeal of the denial of that motion to the Ohio Eighth District Court of Appeals. ECF No. 9-2, Exs. 24 and 27. The latter court dismissed the appeal *sua sponte* for failure to file the record pursuant to Rules 3(A) and 10(A) of the Ohio Rules of Appellate Procedure and Rule 10 of the Local Appellate Rules. ECF No. 9-2, Ex. 28. Although Marshall appealed the ruling to the Supreme Court of Ohio, that court denied leave to appeal. ECF No. 9-2, Exs. 30-32.

      In making its ruling, the State appellate court found that (1) Marshall had failed to follow the aforementioned State procedural rules, and (2) dismissed the appeal on that basis, thereby enforcing its procedural rules and imposing sanction for failure to comply. Failure to comply with written procedural rules detailing the timing and filing of appellate documents has been

(1:09CV0259 )

adjudged a bar to federal habeas review when the rules of appellate procedure breached are well-established and regularly followed, *i.e.*, adequate and independent State procedural rules. *See Nethers v. Sheldon*, 2010 WL 4513816 (S.D. Ohio 2010) (finding that a petitioner's failure to file a timely memorandum in support of his motion for delayed appeal and the State court's subsequent dismissal of the motion for failure to prosecute constitutes an independent and adequate State ground to bar review of federal habeas grounds for relief); *see also Shroyer v. Moore*, 2007 U.S. Dist. LEXIS 63811, 2007 WL 2492312 (S.D. Ohio Aug. 29, 2007), ("In so ruling, the court clearly and expressly relied on both an independent and adequate State ground stemming from petitioner's noncompliance with the court's well-established and regularly-followed written procedural rules governing the timing and filing of the requisite appeal documents."); *see also James v. Warden*, 2007 WL 2326867,*4 (S.D. Ohio 2007) ("Dismissals for failure to comply with a court order and for want of prosecution involve a 'firmly established and regularly followed' practice utilized by all courts, not only the courts of Ohio.").

Given that the first three prongs of *Maupin* have been satisfied, the Court finds that Marshall's first and third grounds for relief are procedurally defaulted. *Maupin*, 785 F.2d at 138. The Court acknowledges, however, that under the fourth prong of the *Maupin* test, the Court may still review Marshall's grounds for relief, if Marshall can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 751 (1991).

(1:09CV0259 )

The record reflects that Marshall has not made a persuasive showing of cause and prejudice as required to excuse his procedural default. He also has not successfully established that a failure to consider his grounds for relief would result in a fundamental miscarriage of justice which generally requires a claim of actual innocence.[6] Accordingly, Marshall's first and third grounds for relief remain procedurally defaulted and should be dismissed on that basis

### IV. Conclusion and Recommendation

For the foregoing reasons, the undersigned Magistrate Judge recommends dismissing the petition for a writ of habeas corpus filed by William Marshall in its entirety without further proceedings and with prejudice.

| December 3, 2010 | s/ Benita Y. Pearson |
|---|---|
| Date | Benita Y. Pearson<br>United States Magistrate Judge |

### OBJECTIONS

Objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also* Thomas v. Arn, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[6] The record before the Court does not indicate that Marshall raised a claim of actual innocence nor make an evidentiary showing to support that claim. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995) (stating that in order to demonstrate actual innocence, it "requires petitioner to support his allegations of constitutional error with new reliable evidence").